IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYO BROWN, *pleading on his own behalf and on behalf of all similarly situated consumers,* <br><br> *Plaintiff,* <br><br> v. <br><br> FIRSTSOURCE ADVANTAGE, LLC, <br><br> *Defendant.* | CIVIL ACTION <br> NO. 17-5760 |

**PAPPERT, J.**  September 21, 2018

**MEMORANDUM**

Dayo Brown sued Firstsource Advantage, LLC alleging improper and deceptive debt collection activity in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. American Express Bank, FSB moved to intervene as a defendant pursuant to Federal Rule of Civil Procedure 24(a)(2). The Court grants American Express's Motion.

I

Brown's claims arise from Firstsource's efforts to collect his American Express credit card debt. Between December 30, 2016 and April 3, 2017, Brown received four letters signed by "American Express Global Collections" inviting him to settle his debt. (Am. Compl. ¶ 15–16, 18–22.) Brown alleges that Firstsource mailed and sent those letters, "intentionally masquerade[ing]" as American Express. (*Id.* at ¶ 7, 22.) Brown brought a putative class action against Firstsource on December 18, 2017, alleging unfair and deceptive acts in violation of the FDCPA. (*Id.* at ¶ 27, 47.)

1

When Brown opened his Gold Delta SkyMiles credit card account on January 30, 2015, he entered into a Cardmember Agreement with American Express that contains an arbitration provision. (Herr Decl., ECF No. 12-2, at 2.) The provision applies to:

> [A]ny current or future claim, dispute or controversy relating to [a customer's] Account(s), this Agreement, or any agreement or relationship you have had with us . . . includ[ing] . . . claims by or against any third party using or providing any product, service or benefit in connection with any account.

(Mot. Intervene Ex. A, ECF No. 12-2, at 15.)

American Express moved to intervene as a defendant on February 21, 2018. (Mot. Intervene 12.) It contends that Brown's claim threatens its ability to use third-party vendors like Firstsource to collect consumer debt. It also argues that Brown's Cardmember Agreement with American Express governs disputes between consumers and third-party vendors, and Brown's putative class action thus threatens American Express's ability to enforce the Agreement's arbitration provision.[1]

Brown opposes the Motion. (Pl.'s Mem. Opp'n Mot. Intervene, ECF No. 17.) Firstsource does not.

II

Under Federal Rule of Civil Procedure 24(a)(2), a court must grant a motion to intervene if the applicant establishes:

> [F]irst, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998). While the four

---

[1] Attached to its Motion, American Express also files a Proposed Motion to Compel Arbitration (ECF No. 12-3) pursuant to Federal Rule of Civil Procedure 24(c).

2

requirements are "intertwined, each must be met to intervene as of right." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). The rule requires "flexibility when dealing with the myriad situations in which claims for intervention arise" as well as "[d]ue regard for efficient conduct of the litigation." *Id.* at 972.

Plaintiff concedes that American Express's application to intervene is timely. (Pl.'s Mem. Opp'n 7.) The Court will consider in turn whether American Express meets the remaining Rule 24(a)(2) requirements.

## A

An applicant's interest in the litigation must be "significantly protectable . . . as distinguished from interests of a general and indefinite character." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (quoting *Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). The "polestar . . . is always whether the proposed intervenor's interest is direct or remote." *Kleissler*, 157 F.3d at 970, 972. An applicant must demonstrate that its interest is "specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania v. President United States of America*, 888 F.3d 52, 58 (3d Cir. 2018) (quoting *Kleissler*, 157 F.3d at 972).

American Express contends that vendors are integral to its ability to collect consumer debt, so it would be disadvantaged by a ruling that Firstsource's practices are unlawful. It also asserts a direct, protectable interest in enforcing the arbitration provision of its contract with Brown. It claims that this interest is specific to it because Firstsource is not a party to the contract. Brown argues that American Express's interest is insufficient because his FDCPA claim does not challenge American Express's

3

right to collect debt or hire third party vendors, and American Express can still freely communicate with consumers regardless of the outcome of the case.

American Express has alleged sufficient interest in this litigation, namely an interest in defending its ability to collect debt using third-party vendors and its interest in enforcing the arbitration provision of its contract with Brown. The fact that Brown's claim does not directly target American Express does not render its interests insufficient or general. As Brown's creditor, American Express is uniquely positioned between Brown and Firstsource. Brown's claim challenges the way American Express's vendors communicate with consumers. And if the arbitration provision of the Cardmember Agreement does govern disputes between consumers and vendors, American Express has a specific interest in ensuring that those claims are resolved in its chosen forum.

B

An applicant establishes that its interest will be impaired or affected, as a practical matter, by the disposition of the action by showing a "tangible threat" to the interest. *President United States of America*, 888 F.3d at 59 (citing *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992)). It is not enough to show that the interest will be "incidentally affected" by the disposition of the action. *Id.* The court is "required to assess the practical consequences of the litigation, and may consider any significant legal effect on the applicant's interest." *Brody*, 957 F.2d at 1122 (internal citations omitted). "An applicant need not . . . prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief." *Id.* at 1123.

4

American Express contends that a ruling in Brown's favor would impair its ability to collect debt using third-party vendors as well as its ability to enforce the arbitration provisions of its agreements with customers. Brown argues that a ruling in his favor could not impair American Express's interests because American Express is not liable for Firstsource's FDCPA violations.

American Express has demonstrated a tangible threat that its interests will be impaired, as a practical matter, by the disposition of this case. Regardless of the outcome, its interest in arbitrating these types of disputes with not only Brown, but all American Express cardholders, will be impaired if it is not given the chance to argue that the arbitration provision of its Cardmember Agreement applies to FDCPA claims against its vendors. *See Brody*, 957 F.2d at 1123 ("[The tangible threat] factor may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant stare decisis effect.") A ruling for Brown that Firstsource violated the FDCPA would also directly affect the way American Express uses vendors to communicate with consumers and collect debt.

C

To establish that its interests are not adequately represented by the existing parties, an applicant may show that those interests "diverge sufficiently" from the interests of the parties to the case. *President United States of America*, 888 F.3d at 60. "This burden is generally 'treated as minimal' and requires the applicant to show 'that representation of [its] interest "*may be*" inadequate.'" *Id.* (quoting *Mountain Top*, 72 F.3d at 368) (emphasis in original).

American Express argues that Firstsource does not adequately represent its

interests because Firstsource, a single vendor, cannot represent American Express's broader interest in ensuring that all vendors may continue to use American Express's name and logo in their communications with cardholders. It also argues that Firstsource cannot represent its interest in enforcing the arbitration provision of the Cardmember Agreement because Firstsource is not a party to that agreement. Brown contends that American Express's interests in this case align with those of Firstsource because both parties desire the same outcome: a ruling that Firstsource's collection practices comply with the FDCPA. Brown further contends that the parties cannot have divergent interests because they are represented by the same counsel.

American Express has met its burden to show that Firstsource may not adequately represent its interests in this case. Firstsource has an interest in defending its own compliance with the FDCPA. That interest is distinct from and narrower than American Express's interest in defending the way its vendors communicate with its cardholders using American Express's name. Moreover, only American Express can enforce the arbitration provision of its contract with Brown. Brown's argument that the parties cannot have divergent interests if they are represented by the same counsel also misses the mark. While it may show that American Express and Firstsource's interests are not adverse, American Express could still raise defenses, like the arbitration provision of the Cardmember Agreement, that Firstsource is unable to invoke. *See Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 n.2 (D.D.C. 2010) ("[R]epresentation by the same counsel is evidence that . . . [the] parties have no conflicting arguments or defenses, [but] it does not automatically follow that counsel would continue to represent the [applicant's] interests even if it were not

allowed to proceed as a party in this case.").

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.