IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYO BROWN, *pleading on his own behalf and on behalf of all similarly situated consumers*,<br><br>        *Plaintiff*,<br><br>   v.<br><br>FIRSTSOURCE ADVANTAGE, LLC,<br><br>        *Defendant*. | CIVIL ACTION<br>NO. 17-5760 |

**PAPPERT, J.**                                                                          February 12, 2019

## MEMORANDUM

     Dayo Brown sued Firstsource Advantage, LLC on his own behalf and on behalf of all similarly situated consumers alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. American Express Bank, FSB intervened in the action and filed a Motion to Compel Arbitration. For the reasons that follow, the Court grants the Motion.

I

     The Court has already summarized the facts giving rise to Brown's claim against Firstsource. *See* (ECF No. 22 at 1–2). Brown identifies Firstsource as a debt collector within the meaning of the FDCPA. (Compl. ¶ 5, ECF No. 1.) American Express represents that it uses Firstsource as a "vendor," acting "on behalf of American Express," through which American Express communicates with its own debtors. (Mem. Supp. Mot. Compel Arbitration 1, ECF No. 24; Mem. Supp. Mot. Intervene 1–2, ECF No. 12-1.)

1

After American Express intervened, *see* (ECF No. 23), it moved to compel arbitration (ECF No. 24). Brown opposes the Motion, *see* (ECF No. 28); Firstsource does not. American Express attached to its Motion its Cardmember Agreement ("Agreement") with Brown. The Agreement contains an arbitration clause that applies to "any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us." (Mot. Intervene Ex. A ("Cardmember Agreement") at 6, ECF No. 24.) The Agreement defines "you" and "us" to include "any corporate parents, subsidiaries, affiliates or related persons or entities." (*Id.*)

The arbitration clause states:

> You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator. *If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration.* Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.

(*Id.* (emphasis added).) "Claim" is defined to include:

> (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, *statute*, regulation, common law and equity; *(3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account*, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account.

(*Id.* (emphasis added).) The Agreement gives the cardmember an opportunity to reject the arbitration clause by sending American Express written notice "within 45 days after your first card purchase." (*Id.* (emphasis omitted).)

Brown acknowledges that the Agreement governs American Express's ability to collect debt on his credit card account. (Resp. Opp'n Mot. Compel Arbitration ("Resp.") at 4–5, 7, ECF No. 28.) He nevertheless challenges the enforceability of the arbitration clause on the grounds that it is "overly broad." (*Id.* at 4.) He also believes his claim against Firstsource falls outside the scope of the clause because Firstsource was not a party to the Agreement and the FDCPA claim arises out of Firstsource's "collection *conduct*, rather than actual collection on the debt." (*Id.* at 4 (emphasis added).)

II

The Court must initially decide whether the Motion to Compel Arbitration should be reviewed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or as a motion for summary judgment under Rule 56. *See generally Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 771–76 (3d Cir. 2013). Where "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti,* 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)); *see also Brown v. Sklar-Markind*, 2014 WL 5803135 at *6 (W.D. Pa. Nov. 7, 2014) (collecting cases in which district courts rely on the motion to dismiss standard where "the Plaintiff does not dispute the fact that he executed an agreement to

3

arbitrate, and the complaint, undisputed averments and undisputed documents attached to the motion to compel and response do not require the court to make factual findings in order to determine arbitrability"). The Rule 12(b)(6) standard "is inappropriate when . . . the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound.'" *Guidotti*, 716 F.3d at 774 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980)).

Brown does not dispute that he signed the American Express Cardmember Agreement containing the arbitration clause, nor does he contest the authenticity of that Agreement, which is attached to American Express's Motion. He instead questions the arbitration clause's "validity." (Resp. 4.) That is not relevant to determining whether the Rule 12(b)(6) or Rule 56 standard applies. Brown does not support his challenge to the enforcement of the clause—"strictly a legal one"—with reliable evidence (or any evidence) that he did not intend to be bound by the arbitration clause. Brown offers nothing to show that discovery on the issue of contract formation is warranted. *Brown*, 2014 WL 5803135 at *7; *see also Glover v. Darway Elder Care Rehab. Ctr.*, 2014 WL 931459 *4 (M.D. Pa. 2014). The Court accordingly decides the Motion pursuant to the Rule 12(b)(6) standard. *See Kipp v. Weyerhauser Co.*, 2018 WL 6602051 at *2 (E.D. Pa. Dec. 14, 2018).

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

facially plausible if the facts pleaded "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, the Court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. The Court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

III

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, sets forth a federal policy that favors arbitration and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. § 3, 4) (emphasis omitted). Until the Court determines whether arbitration should be compelled, judicial review is limited to two questions: (1) did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) does the dispute fall within the language of the arbitration agreement? *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)). In conducting this review, the Court applies ordinary contract principles.[1]

---

[1] To determine which state's law applies, the Court looks to the choice-of-law rules of Pennsylvania, the forum state. *See Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (applying *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) to federal question cases). Pennsylvania courts "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them" unless either "(a) the chosen state has no substantial relationship to the parties or transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to fundamental policy of a state which has a materially greater interest." *Id.* (quoting *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir.

5

*Hornicek v. Cardworks Servicing, LLC*, 2011 WL 2623274 at *2 (E.D. Pa. June 29, 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

A

Brown challenges the validity of the Agreement's arbitration clause on the grounds that it is "overly broad." (Resp. 8–12.) He contends that if the clause can encompass his claim against Firstsource, a third party, it could encompass "any dispute resulting from any relationship between the parties," leading to an "absurd result." (Resp. 11.) He likens the clause to arbitration clauses examined by other courts in *In re Jiffy Lube, Int'l Inc.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) and *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), deemed unenforceable due to unconscionability and lack of mutual assent, respectively.

In *Jiffy Lube*, the court denied defendant's motion to compel arbitration of a Telephone Consumer Protection Act claim arising from plaintiff's receipt of text messages from defendant offering discounted services. *Jiffy Lube*, 847 F. Supp. 2d at

---

1994) (noting that Pennsylvania courts have adopted section 187 of the Restatement, Second, Conflict of Laws)).

Brown's Agreement contains the following choice-of-law provision: "Utah law and federal law govern this Agreement and your Account. . . . We are located in Utah. We hold your Account in Utah. We entered into this Agreement with you in Utah." (Cardmember Agreement 5.) Utah has a substantial relationship to American Express and the Agreement, which Brown does not dispute. The Court sees no reason, nor has Brown offered one, to conclude that Pennsylvania has a materially greater interest in the enforceability of the arbitration clause or that applying Utah law would be contrary to a fundamental policy of Pennsylvania. *See Gay*, 511 F.3d at 390; *Cook v. Gen. Nutrition Corp.*, 2018 WL 4440418 at *3 (3d Cir. Sept. 17, 2018); *see also Hornicek*, 2011 WL 2623274 at *3 n.5.

1262. Plaintiff had entered an arbitration agreement with Jiffy Lube when he visited a service station for an oil change.² *Id.* The court observed that the "incredibly broad" language of the arbitration clause was "not limited to disputes arising from or related to the transaction or contract at issue"—the oil change plaintiff received. *Id.* The court refused to "salvage the [clause] by writing in terms that would encompass the alleged TCPA violations." *Id.* at 1263.

In *Wexler*, the court denied defendant AT&T's motion to compel arbitration of a TCPA claim arising from plaintiff's receipt of calls and text messages from AT&T regarding U-verse, a television and internet service. *Wexler*, 211 F. Supp. 3d at 501–02. Plaintiff had entered into an arbitration agreement with Mobility, a non-party to the case, when she ordered a phone with wireless service from Mobility's website. *Id.* at 501. The court found that Mobility's only connection to the TCPA claim against AT&T was that plaintiff's phone was on Mobility's network. *Id.* at 502–03 ("[T]hat happenstance does not mean, in any reasonable sense, that the voicemails and text messages arose out of or are related to [plaintiff's] former service agreement with Mobility."). While the broad arbitration clause could have been read to encompass plaintiff's claim against AT&T, the court concluded, citing New York law, that plaintiff and Mobility lacked mutual intent to arbitrate disputes that were not connected "in some way" to their service agreement. *Id.* at 504–05.³

---

² The arbitration clause provided: "Jiffy Lube® and you agree that any and all disputes, controversies or claims between Jiffy Lube® and you (including breach of warranty, contract, tort or any other claim) will be resolved by mandatory arbitration . . . ." *Jiffy Lube*, 847 F. Supp. 2d at 1262.

³ The court in *Wexler*, after considering the *Jiffy Lube* decision, declined to hold that Mobility's arbitration clause was "unconscionably broad." *Wexler*, 211 F. Supp. 3d at 504–05 (opining that such a holding "would be in tension with *Concepcion*[, 563 U.S. 333]"). The court stated that its "reliance on the [parties'] lack of mutual intent, by contrast, is entirely consistent with the FAA." *Id.* at 505.

7

Unlike plaintiffs' TCPA claims in *Jiffy Lube* and *Wexler*, Brown's FDCPA claim arises from conduct related to the credit card account he opened when he entered into his Cardmember Agreement with American Express and agreed to resolve any claims, including claims based on statute, by individual arbitration. And unlike the party moving to compel arbitration in *Wexler*, American Express is a signatory seeking to enforce its own Agreement. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) ("While the predicate conduct in *Jiffy Lube* was separate and unrelated to the underlying contract, Defendants' alleged conduct in this case is directly related to Plaintiffs' accounts and the contracts that govern them."); *Stinson v. Best Buy Co.*, 2018 WL 3850739 at *10 (D. Minn. June 26, 2018), *report and recommendation adopted*, 2018 WL 3848443 (D. Minn. Aug. 13, 2018) ("[N]o part of [*Wexler*] can be read to hold that an arbitration provision must be invalidated in its entirety simply because it could be read too broadly. . . . *Wexler* supports the idea that an arbitration provision cannot be applied to require arbitration of claims wholly unrelated to the contract itself."). Brown and American Express mutually intended to arbitrate disputes related to Brown's credit card account. The arbitration clause is valid and enforceable.[4]

B

Arbitration of a claim may be ordered "only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citations omitted) (emphasis in original). Whether a claim

---

[4] This conclusion comports with Utah law, which mirrors the New York law cited in *Wexler* regarding mutual intent. *See, e.g.*, *Far W. Bank v. Robertson*, 406 P.3d 1134, 1142 n.15 (Utah Ct. App. 2017), *reh'g denied* (Dec. 11, 2017), *cert. denied*, 417 P.3d 576 (Utah 2018) (quoting *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995)) ("An acceptance is a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made.").

falls within the scope of an arbitration clause turns on the relationship between the breadth of the clause and the nature of the claim. *CardioNet*, 751 F.3d at 172. Doubts concerning the scope of an arbitration agreement must be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses*, 460 U.S. at 24–25); *see also Granite Rock*, 561 U.S. at 301 (noting that the "presumption of arbitrability [applies] only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand"). In determining the scope of the agreement, the Court must focus on "the factual underpinnings of the claim rather than the legal theory alleged in the complaint" to prevent "a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *CardioNet*, 751 F.3d at 173 (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) and *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)).

The arbitration clause in Brown's Cardmember Agreement states that Brown or American Express may elect to resolve "any claim" by individual arbitration. (Cardmember Agreement 6.) As set forth above, *see supra* Section I, "claim" includes "any claim, dispute or controversy relating to [Brown's] Account, th[e] Agreement, or any agreement or relationship [Brown] ha[s] or had with" American Express. (*Id.*) It extends to claims based on "fraud, statute, regulation," claims "by or against any third party using or providing any product, service or benefit in connection with any account" and claims that "arise from or relate to . . . any account created under any of the agreements, or any balances on any such account." (*Id.*) Brown argues,

9

notwithstanding this language, that American Express cannot compel arbitration on Firstsource's behalf and that the Agreement does not encompass claims relating to FDCPA violations by debt collectors. (Resp. 7–8, 14.)

Brown relies on *Pacanowski v. Financial*, 271 F. Supp. 3d 738, 749 (M.D. Pa. 2017), in which the court denied a non-signatory debt collector's motion to compel arbitration of plaintiff's FDCPA claim. The court first held, relying on the Third Circuit Court of Appeals's opinion in *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017), that a non-signatory to the arbitration agreement could not invoke the arbitration clause.[5] *Pacanowski*, 271 F. Supp. 3d at 745–50. The court proceeded to discuss whether the FDCPA claim fell within the scope of the clause. It found that because the agreement at issue "d[id] not expressly provide for claims that arise from a non-assignee debt collector's conduct," the FDCPA claim fell outside the scope of the parties' agreement. *Id.* at 749.

Brown also relies on *Bazemore v. Jefferson Capital Systems, LLC*, 2015 WL 2220057 at *7 (S.D. Ga. May 11, 2015), *aff'd on other grounds*, 827 F.3d 1325 (11th Cir. 2016). There, the court found plaintiff's FDCPA claims outside the scope of an arbitration agreement between plaintiff and her creditor. The court acknowledged "that the FAA would have [it] broadly read the . . . clause, with its use of the terms 'arising from' and 'relating to' Bazemore's account, to favor arbitration," but held that

---

[5] In *White*, the Third Circuit held that Sunoco, a non-signatory to an arbitration agreement between plaintiff and Citibank, could not compel arbitration of plaintiff's fraud claims against Sunoco. 870 F.3d 257. Sunoco argued that it was entitled to invoke the arbitration clause because the clause compelled arbitration of claims against Citibank's "connected entities." *Id.* at 267. The court responded that Sunoco's argument "confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration" and maintained that Sunoco could not compel arbitration even if the arbitration clause could be read to encompass plaintiff's claims against it. *Id.*

10

plaintiff had not "sign[ed] away her right to seek relief in federal court under consumer protection laws absent a clear and unmistakable intent to do so." *Bazemore*, 2015 WL 2220057 at *7. The court noted that its holding was "buttressed by the fact that there is scant evidence that [plaintiff] ever received or read the arbitration agreement." *Id.* at *7 n.10; *see also Bazemore*, 827 F.3d at 1332 n.4 (affirming on the grounds that defendant did not meet its burden to prove the existence and terms of an arbitration agreement).

Unlike in *Pacanowski* and *Bazemore*, the party moving to compel arbitration of Brown's claim is a signatory to the Agreement containing the arbitration clause. Moreover, Brown's Cardmember Agreement expressly encompasses claims "against any third party . . . providing any . . . service . . . in connection with" Brown's account. Although this language does not specifically refer to FDCPA claims against debt collectors, its scope is, at the very least, ambiguous. *See Brown*, 2014 WL 5803135 at *11–13 (compelling arbitration of FDCPA claim against debt collector where arbitration clause was "broad and encompassing" and defendant's collection activities "specifically arose from and were dependent upon" the agreement containing the arbitration clause); *Hornicek*, 2011 WL 2623274 at *3 (compelling arbitration of FDCPA claim, finding that debt collector became involved in "servicing" plaintiff's account by collecting debt); *Fedotov v. Peter T. Roach & Assocs., P.C.*, 2006 WL 692002 at *3 (S.D.N.Y. Mar. 16, 2006) (compelling arbitration of FDCPA claim against debt collector, finding that the collector's conduct arose from plaintiff's charges on his credit card account).

Brown's contention that the Court must find "express" or "clear and unmistakable intent" to arbitrate FDCPA claims in the Agreement before compelling

11

arbitration of his claim conflicts with the Court's duty to resolve doubts concerning the scope of the arbitration clause in favor of arbitration. *See Mitsubishi Motors*, 473 U.S. at 626; *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 304 (3d Cir. 2016); *CardioNet*, 751 F.3d at 172. As there is no dispute that FDCPA claims are subject to arbitration, generally, *see Brown*, 2014 WL 5803135 at *12 (collecting cases); *Pacanowski*, 271 F. Supp. 3d at 749, and it is at most ambiguous as to whether the clause at issue encompasses Brown's claim, the Court must compel arbitration.

IV

Having found that a valid and enforceable arbitration clause encompasses Brown's claim, the Court must "rigorously enforce [the clause] according to [its] terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds*, 470 U.S. at 221). Brown's Cardmember Agreement provides:

> If either party elects to resolve a claim by arbitration, that claim will be arbitrated on an individual basis. There will be no right or authority for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of the general public, other cardmembers or other persons similarly situated.

(Cardmember Agreement 6.) The Court will enforce this provision by ordering arbitration to proceed on an individual basis and not as a class action.

Moreover, the FAA provides that "the court . . . upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. American Express moved to stay this action pending arbitration, (Mem. Supp. Mot. Compel Arbitration 1, 12), so it shall be stayed and placed in civil suspense pending the outcome of arbitration. *See Lloyd v. HOVENSA,*

*LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (holding that a district court is obligated to grant a party's request to stay the trial once it decides to order arbitration).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.